## Louisville & Atlantic R. R. Co. v. Phillips's Admr.

(Decided January 9, 1913.)

### Appeal from Lee Circuit Court.

1. Railroads—Action to Recover for Death of Brakeman—Notice by Superior of Whereabouts—Evidence.—In an action against a railroad company to recover for the death of a brakeman injured in a yard of the company, proof that after an unusually hard bump of the cars he was found injured, is not sufficient to sustain a recovery in the absence of evidence showing that his superiors had notice of his whereabouts, or of danger to him in the bump of the cars.

2. Railroads—Injury to Brakeman—Action for Recovery—Evidence.— A brakeman who voluntarily went in between two cuts of cars after an unsuccessful attempt to couple them, and was hurt by

reason of the rebound of the cars not attached to the engine, from their striking other cars on the track, cannot recover for his injury, although the rebound was due to the unusual force with which the coupling was attempted to be made, as he knew all the facts when he went in between the cars; but he may recover if he was hurt by a further movement of the engine after a stop signal was given if the engine was again moved without any further signal.

3.   Witnesses—When Witness Competent to Testify as Expert as to Movement of Cars.—A witness is not competent to testify as an expert on the movement of an engine and cars unless his experience in the business is such as to qualify him to speak on the subject.

BENJAMIN D. WARFIELD, WALLACE & HARRISS, and GOUR-LEY & GOURLEY, for appellant.

J. MOTT McDANIEL, ROBT. HARDING, and H. V. McCHESNEY, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

William Phillips was a breakman in the service of the Louisville and Atlantic Railroad Company in October, 1907. Between nine and ten o'clock at night at Heidelberg, Ky., one of his hands was caught and mashed between two cars. Lockjaw set up from the injury, and he shortly afterwards died. This suit was brought by his administrator against the railroad company to recover for his death on the ground that it was caused by the negligence of his superiors in the operation of the train. On the first trial of the case there was a verdict in favor of the plaintiff for $15,000. The court granted a new trial and on the second trial there was a verdict and judgment in favor of plaintiff for $6,691. The defendant appeals and the plaintiff has prosecuted a cross-appeal for the purpose of reinstating the first verdict.

The evidence on both trials was practically the same. It is insisted for the railroad company that the circuit court should have instructed the jury peremptorily to find for the defendant. Outside of the witnesses introduced for the plaintiff to show his earning capacity, his health, and the like, the only evidence introduced by him as to how the injury occurred is in substance, put in narrative form, as follows:

Walker Childers: "I was about 100 feet from the place where he was injured; I heard the cars hit and heard him holler; the cars hit twice, this way (here the

witness clapped his hands together), then he hollered. I put on my clothes at once and went over there. He said he went to couple the cars and they came back too fast and failed to couple, and he had to pull out the knuckle and got his hand caught in it." On cross-examination he said: "I asked him how he got hurt and he said he went to make the coupling and it came back too fast and he had to pull out the knuckle, and caught his hand and mashed it. Q. What did he say about it missing? A. He said it failed to couple. Q. It failed to couple? A. Yes, sir. Q. And he did what? A. Went to pull out the knuckle but caught his hand and mashed it. There was a loud crash of the cars when they came together—they hit loud—a loud crashing lick; it was unusually loud it seemed like."

Dr. Treadway, who was about thirty yards distant from the place of the accident, was summoned by one of the trainmen, and being asked as to what was said by Phillips, when he got to him, testified: "In trying to make the coupling, he said, it caught his glove and he couldn't get his hand away, and the engine and the car next the engine crushed his hand before he could get it out from between the cars. The engine and the cars came back and caught him before he could get it out. He said the car was making too great a speed before he could get out of the way, and caught his glove and rebounded and came back so quickly that he could not get out of the way, and wounded him on the rebound. He said he had to reach in and pull the lip of the coupler out in order to make the coupling."

G. W. Childers, whose store was about 100 feet away, testified that what attracted his attention was the crashing of the cars and Phillips' hollering like he was hurt, and some of the men saying to go and get the doctor. The cars seemed to strike a little harder than usual and seemed to kinder rebound, and make a second crash and the boy hollered. J. P. Brandenburg, who lived about 600 yards away, testified that it was a loud crash, a very loud one.

This was all the evidence for the plaintiff as to how the injury occurred, and on this evidence the defendant's motion for a peremptory instruction should have been sustained; for there was nothing in the evidence to show that any of his superiors on the train had any notice of his whereabouts or that they omitted to do anything that they should have done for his safety. In the handling

of freight trains there must, of necessity, be hard bumps and the noise will naturally seem louder at night than in the day time. The naked fact that there was an unusual crash of the cars and that afterwards one of the brakemen was found to be injured, is not sufficient to warrant a recovery against the railroad company in the absence of any showing of negligence on the part of those in control of the cars, or proof of facts from which it may reasonably be inferred that such negligence was the proximate cause of the injury.

But we have often held that, though the plaintiff fails to make out his case, if the defendant's proof supplies the facts which the plaintiff failed to prove, a judgment for the plaintiff will not be reversed because the court failed to instruct the jury peremptorily to find for the defendant at the conclusion of the plaintiff's evidence. It is insisted that this rule should be applied here. This makes it necessary to consider the defendant's proof. The proof by the defendant's conductor, engineer, fireman and the other brakeman is substantially to this effect: It was a dark night. They had three cars attached to the engine and there were standing on the sidetrack two cars coupled together, and about five feet from these cars there were five cars coupled together. They backed in on this track for the purpose of coupling to these cars. Phillips threw the switch for that purpose and signaled for the engineer to come back. When he had backed up nearly to the two cars, the conductor gave the stop signal and the engineer stopped, but not before the cars attached to the engine had bumped against the two cars standing on the sidetrack. This bump was made for the purpose of coupling to these two cars, but the coupling failed to make and Phillips went to the knuckle of the car farthest from the engine to raise the knuckle for the purpose of their trying for the second time to make the coupling. While he was trying to raise the knuckle, the two cars bumped against the five cars and rebounded, coming slowly back towards the knuckle where he was working. The conductor, seeing his danger, called to him, but before he could get his hand out, in consequence of his glove hanging, the cars came back and caught his hand against the knuckle and mashed it. There was no movement of the engine after the conductor gave the stop signal. The cars attached to the engine were stationary, and Phillips' injury was due to the two cars being knocked against the five cars and then

rebounding. Dr. Jarvis, who treated Phillips, says that he made to him this statement: "He said that they backed into the sidetrack at Heidelberg, and hit some cars—two cars on the track—and knocked them back. In the meantime he reached his hand in to pull something out, a knuckle or something, and before he could get his hand out, during the rebound, the cars came back and caught him." All of the defendant's witnesses give this version of the transaction. There is no contrary evidence. The ground was practically level. There is evidence that the cars set in motion would continue to roll on down toward the depot; but all the witnesses agree that the ground looked level. We do not find any conflict between the evidence for the plaintiff and the evidence for the defendant. While the words used by Dr. Treadway and Walker Childers are not the same used by Dr. Jasper, the meaning is not different when we consider the circumstances. The defendant's evidence, therefore, did not strengthen the plaintiff's case, but, on the contrary, showed that the young man's injury was due to an accident. The testimony of Childers and the other witnesses that they heard two licks close together corresponds exactly with the testimony of the railroad men; for the two cars were only about five feet from the five cars, and when the engine and three cars backed against them with some force, it would only be a second before they would pass over the five feet and strike against the five cars, and when they struck the five cars, the smaller body would naturally rebound.

The proof that there was a violent crash of the cars making a louder noise than the witness had ever heard before, would be sufficient to take the case to the jury on the question of negligence in that movement of the train if Phillips had been hurt then. But all the proof shows that he was not then between the cars, but with full knowledge of all that had been done, went in between the cars to raise the knuckle after the coupling failed to make. The rebound of the two cars may have been due to the unnecessary force with which they were struck, but this was not the proximate cause of his being hurt. He was near the cars and knew how they had been struck, and when with this knowledge he went in between them of his own volition, it was incumbent on him to look out for his own safety. The proximate cause of his injury was his undertaking to adjust the knuckle without noticing where the other two cars were or how they were

moving. After he had thus placed himself in peril and his danger was discovered, it was too late to avert the injury to him. We, therefore, conclude that on all the evidence the court should have instructed the jury peremptorily to find for the defendant.

If, on another trial, there should be evidence sufficient to take the case to the jury that the engineer, after receiving the stop signal and without any other signal, backed the cars attached to the engine down against the other cars after the coupling had missed, and thus by his negligence brought about the collision, the case may be submitted to the jury on this question by an appropriate instruction in substance the converse of instruction D asked by the defendant on the trial; and then that instruction will be given for the defendant.

The court's instructions did not properly define the issue to the jury. Neither Walker Childers nor James Newman qualified themselves to testify as experts on the management of an engine or train; and on another trial this testimony will be omitted.

Judgment reversed and cause remanded for further proceedings consistent herewith.

DISSENTING OPINION BY JUDGE NUNN.

It is said in the opinion:

"The proof that there was a violent crash of the cars making a louder noise than the witness had ever heard before, would be sufficient to take the case to the jury on the question of negligence in that movement of the train if Phillips had been hurt then."

This is in conformity with the rule stated in Ashland Coal & Iron Railway Co. v. Wallace, 101 Ky., 626, and several other cases. But the opinion proceeds by saying that Phillips was not hurt at the time the unusual crash and noise were heard, and it is with this statement that I cannot agree. In telling Dr. Treadway, Childers and others about the injury, Phillips said that the engine and cars attached to it came back too fast. All the evidence shows that the engine was following up the cars, hence the rebound. The witnesses gave an illustration of the time that elapsed between the first and second crash of the cars, by clapping their hands, showing that there was a lapse of but a second or two. The testimony by the witnesses to the effect that Phillips left the place where he was when the first crash came and went behind the cars to make the second attempt to couple the cars,

was for the purpose of making it appear that some appreciable time elapsed between the first and second crash, when the proof shows that the second followed almost immediately after the first. For instance, Dr. Treadway said:

"The engine and cars came back and caught him before he could get out. He said the car (meaning the one attached to the engine) came back and caught him before he could get out. He said the car was making too great speed before he could get out of the way, and caught his glove and rebounded and came back so quick that he couldn't get out of the way, and wounded him on the rebound. * * * * * * In trying to make the coupling he said that it caught his glove and he couldn't jerk his hand away and the engine and the car next to the engine crushed his hand before he could get it out or from between the cars."

For these reasons, I dissent from the opinion.